**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4883-17T4

EDWARD CORREA,

       Plaintiff-Appellant,

and

NEW JERSEY DEMOCRATIC
STATE COMMITTEE,

       Plaintiff/Intervenor-
       Appellant,

v.

ANN GROSSI, JOHN WOJTAZEK
and TARA PETTONI,

       Defendants-Respondents.

_____

Submitted January 9, 2019 – Decided April 8, 2019

Before Judges Nugent, Reisner and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1026-18.

Genova Burns, LLC, attorneys for appellant New Jersey State Democratic Committee; Jardim, Meisner &

Susser, PC, attorneys for appellant Edward Correa (Rajiv D. Parikh and Scott D. Salmon, of counsel; Rajiv D. Parikh, Matthew Baker and Paul J. DeMartino, Jr., on the joint brief).

Carbone and Faasse, attorneys for respondents Ann Grossi and John Wojtazek (John M. Carbone, on the brief).

Antonelli Kantor, PC, attorneys for respondent Tara Pettoni (Jarrid H. Kantor, of counsel; Jarrid H. Kantor and Yulieika Tamayo, on the brief).

Pashman Stein Walder Hayden and American Civil Liberties Union of New Jersey Foundation, attorneys for amicus curiae American Civil Liberties Union of New Jersey (CJ Griffin, Jeanne M. LoCicero, and Alexander R. Shalom, of counsel; CJ Griffin, on the brief).

PER CURIAM

In this opinion, we address the one novel issue placed before us. Where N.J.S.A. 19:23-22.4 requires that sample primary ballots be printed in Spanish as well as English, must the official primary ballots, including mail-in ballots, also be printed in Spanish and English? Reading N.J.S.A. 19:23-22.4 in pari materia with related sections of the election laws, and considering the Legislature's policy to avoid disenfranchising voters whose primary language is Spanish, we conclude that the answer to the question is yes. To avoid disrupting the electoral process, our decision is prospective only, and any future challenge

2

based on this decision must be filed in sufficient time to permit effectuation of the relief sought without delaying the election.

I

Before continuing our discussion, we address the procedural posture of the case. A few days before the June 5, 2018 primary election, plaintiff Edward Correa filed an order to show cause challenging the machine and mail-in ballots in Dover, Morris County. At the time, Correa was a "declared candidate" for a seat on the district committee in Ward 3, District 1 in Dover. Because at least ten percent of the registered voters in Dover spoke Spanish as their primary language, N.J.S.A. 19:23-22.4 required that the sample ballots be printed in both English and Spanish. Relying on N.J.S.A. 19:23-31 and N.J.S.A. N.J.S.A. 19:63-7, Correa argued that the machine and mail-in ballots likewise should have been bilingual. The New Jersey Democratic State Committee intervened as a plaintiff in the action.[1]

The order to show cause, seeking injunctive relief, was heard on the Friday before the scheduled Tuesday election. After hearing arguments addressing both the legal issues and the practical impediments to granting plaintiffs the relief they sought, the trial court rejected plaintiffs' legal contentions and denied the

---

[1]  We will refer to Correa and the intervenor collectively as plaintiffs.

A-4883-17T4

application for an injunction. The trial court noted that the Legislature specifically added the bilingual-printing requirement only as to sample ballots and not as to official ballots, and reasoned that if the Legislature intended to change the language requirement for official ballots it would have specifically so provided.

The application for injunctive relief with respect to the June 5, 2018 primary election is now moot, since the election is long over. However, plaintiffs also sought an order requiring the County Clerk to provide bilingual ballots in future elections. The appeal from the denial of that relief is not moot. However, even if the entire appeal were moot, we would address it because the State election law issue concerns a matter of significant public importance.[2] See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996).

---

[2] We reject plaintiffs' arguments under section 203 of the Federal Voting Rights Act (FVRA), 52 U.S.C. § 10503(b)(2)(A), for the reasons stated by the trial court. As the trial court stated, the claim is without merit because the Federal Director of the Census did not designate Morris County as being subject to section 203. We will not address plaintiffs' arguments under sections 2(a) and 4(e) of the FVRA. Those issues were not raised in the trial court. See Nieder v. Royal Indem. Ins. Co., Inc., 62 N.J. 229, 234 (1973). We also decline to consider census documents that were improperly included in plaintiffs' appendix although not presented to the trial court. See R. 2:5-4(a). Plaintiffs' argument concerning alleged improper formatting of the mail-in ballot is moot, and we decline to address it. We will not address plaintiffs' New Jersey Civil Rights Act claim because it was raised for the first time on appeal. Nieder, 62 N.J. at 234.

The appeal before us presents a question of statutory interpretation, as to which our review is de novo. <u>Murray v. Plainfield Rescue Squad</u>, 210 N.J. 581, 584 (2012).

The issue arises from an apparent contradiction between N.J.S.A. 19:23-31, which requires the official primary sample ballot to be, as closely as possible, a facsimile of the official primary ballot, and a 1974 amendment to a separate section of the election law that requires the official sample primary ballot to be printed in Spanish and English where ten percent of an election district's registered voters' primary language is Spanish.[3]  N.J.S.A. 19:23-22.4. Plaintiffs also rely on N.J.S.A. 19:63-7, which requires that mail-in ballots "shall be as nearly as possible facsimiles of the election ballot to be voted at the election."

The general sample ballot statute provides as follows:

> <u>The official primary sample ballot shall be, as nearly as possible, a facsimile of the official primary ballot to be voted at the primary election</u> and shall be printed on paper different in color from the official

_____

[3]  A similar facial contradiction exists between the general statute concerning sample ballots for the general election, N.J.S.A. 19:14-22, and the statute requiring bilingual general election sample ballots in certain districts, N.J.S.A. 19:14-21.  However, the issue concerning general election ballots is not before us.

A-4883-17T4

primary ballot, so that the same may be readily distinguished from the official primary ballot. The <u>official primary sample ballot shall have printed at the top</u> in large type the words: "<u>This official primary sample ballot is an exact copy of the official primary ballot to be used on primary election day</u>. This ballot cannot be voted." The official primary sample ballot shall also have printed thereon, following the words which indicate the election district, the following words: "The polling place for this election district is

**(Stating the location of said polling place)."**

[N.J.S.A. 19:23-31 (emphasis added; bold in original).]

Section 31 was adopted in 1930, <u>L.</u> 1930, <u>c.</u> 187, § 293, and has never been amended.

The primary sample ballot provision requiring bilingual printing reads as follows:

In all counties the county clerk shall cause to be printed a sufficient number of official primary ballots and official primary sample ballots of each political party, in proper form for the mailing of such sample ballots at the times and in the manner and number as required by the provisions of Title 19 of the Revised Statutes, and shall furnish such official primary sample ballots to the proper officer or officers on the earliest possible date preceding the primary election.

<u>In the counties described by this section, for each election district within the county in which the primary language of 10% or more of the registered voters is Spanish, the county clerk shall similarly cause to be</u>

6

> printed bilingually in English and Spanish a sufficient number of official primary sample ballots of each political party, and shall similarly furnish such official primary sample ballots to the proper officer or officers.
>
> [N.J.S.A. 19:23-22.4 (emphasis added).]

The first paragraph of section 22.4 was adopted in 1965.  L. 1965, c. 29, § 2.

The second paragraph, highlighted above, was adopted in 1974.  L. 1974, c. 51, § 1.

The mail-in ballot provision on which plaintiffs rely reads as follows:

> a. Each county clerk shall have printed sufficient mail-in ballots for each primary election for the general election, and for the general election.  Along with such ballots the clerk shall also furnish inner and outer envelopes and printed directions for the preparation and transmitting of such ballots used in the election in the county.
>
> b. The mail-in ballots shall be printed on paper of a different color from that used for any primary or general election ballot, but in all other respects, shall be as nearly as possible facsimiles of the election ballot to be voted at the election.
>
> [N.J.S.A. 19:63-7 (emphasis added).]

This section, L. 2009, c. 79, § 7, was adopted in 2009, as part of the Vote By Mail Law, which was designed to simplify the voting process.[4] See N.J.S.A. 19:63-1; Senate State Gov't Comm., Statement to Senate Comm. Substitute for S. 1380 (June 12, 2008).

On this appeal, defendants urge us to adopt the trial court's reasoning and look to the literal words of the statute, particularly the absence of a "bilingual language" requirement in the statutory provisions pertaining to official ballots. Plaintiffs, joined by amicus curiae American Civil Liberties Union of New Jersey, contend that once the Legislature amended the sample ballot law, the "facsimile" provision in N.J.S.A. 19:23-31 would automatically require that the official ballots follow the required format of the sample ballots. They further argue that if the official machine ballots must conform to the sample ballots, the mail-in ballots must likewise conform, because they must be exact duplicates of the machine ballots. See N.J.S.A. 19:63-7. While plaintiffs concede the law is ambiguous on those points, they urge that we resolve the ambiguity by considering the absurd result of defendants' proffered interpretation, and by

---

[4]  As part of an omnibus amendment to the election laws, L. 2011, c. 134, the section was amended in 2011, to eliminate a reference to a separate presidential primary. L. 2011, c. 134, § 51.

considering the Legislative purpose of statutory amendments designed to protect Spanish-speaking voters.

Where the plain language of a statute is clear, we enforce the statute as written. See DiProspero v. Penn, 183 N.J. 477, 492 (2005). However, our basic rules of statutory interpretation recognize that not every statute is clear, and in case of ambiguity, our guiding light is the Legislature's intent.

> Our paramount goal in interpreting a statute is to give effect to the Legislature's intent. When that intent is revealed by a statute's plain language – ascribing to the words used "their ordinary meaning and significance" – we need look no further. However, not every statute is a model of clarity. When the statutory language is sufficiently ambiguous that it may be susceptible to more than one plausible interpretation, we may turn to such extrinsic guides as legislative history, including sponsor statements and committee reports. We may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme. An enactment that is part of a larger statutory framework should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme. We also must be guided by the legislative objectives sought to be achieved by enacting the statute.
>
> [Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012)(citations omitted).]

As our Supreme Court recently reminded us, when we are faced with ambiguity in a statute, we should consider the legislative intent animating the entire statutory scheme of which the specific provision is a part.

> [L]egislative intent controls because "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as consonant to reason and good discretion." When "discerning that [legislative] intent we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part."
>
> [Haines v. Taft, __ N.J. __, __ (2019) (slip op. at 17) (citations omitted).]

Even an election statute that is facially "straightforward" must be construed "in a common-sense way that accords with the legislative purpose" of the election laws to avoid disenfranchising qualified voters. In re Holmes, 346 N.J. Super. 372, 376-77 (App. Div. 2002).

"Where there are two contradictory provisions in a statute, the primary object is to ascertain the legislative design with reasonable certainty[.]" Brewer v. Porch, 53 N.J. 167, 174 (1969). The Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose.

> When attempting "to discover the legislative intent, the statute must be read in light of the old law, the mischief sought to be eliminated and the proposed remedy."

10

> Also, "[a]cts in pari materia as well as related acts not strictly in pari materia, should be examined."
>
> [Bd. of Educ. of Sea Isle City v. Kennedy, 196 N.J. 1, 13 (2008) (alteration in original) (citations omitted).]

In construing election laws, we bear in mind their fundamental purpose. "Because the right to vote is the bedrock upon which the entire structure of our system of government rests, our jurisprudence is steadfastly committed to the principle that election laws must be liberally construed to effectuate the overriding public policy in favor of the enfranchisement of voters." Afran v. Cty. of Somerset, 244 N.J. Super. 229, 232 (App. Div. 1990). "[O]ur state election laws are designed to deter fraud, safeguard the secrecy of the ballot, and prevent disenfranchisement of qualified voters. In furtherance of those goals, we have held that it is our duty to construe elections laws liberally." In re Gray-Sadler, 164 N.J. 468, 474-75 (2000) (citations omitted).

Considering the statutory scheme as a whole, it is clear that the Legislature has expressed a strong policy interest in protecting Spanish-speaking voters from being disenfranchised. The Legislature has adopted a panoply of protections in voting districts where the primary language of at least ten percent of registered voters is Spanish. See N.J.S.A. 19:14-21 (bilingual sample ballots for general elections); N.J.S.A. 19:6-1 (appointment of additional District Board

11

of Elections members who are of Hispanic origin and fluent in Spanish); N.J.S.A. 19:49-4(a)(2), (b) (delivery and display of bilingual sample ballots at a polling places). In counties where the primary language of at least ten percent of registered voters is Spanish, notices for challenging voters, instructions and affidavits to be completed by challenged voters, and complaint forms concerning the conduct of elections, must all be bilingual. See N.J.S.A. 19:12-9; N.J.S.A. 19:15-18.1; N.J.S.A. 19:32-4.1. Additionally, bilingual voter registration forms must be available in any county where bilingual sample ballots are required in at least one of the county's election districts. N.J.S.A. 19:31-6.4(c).

As previously noted, defendants contend that if the Legislature intended to require bilingual official ballots, it would have included that requirement at the same time that it amended the statutes to require bilingual sample ballots. Plaintiffs respond that the Legislature should be deemed to be aware that sample ballots must be an exact copy, or facsimile, of the official ballot, and we should infer from the "facsimile" provisions of the election laws that the Legislature would expect the official ballots to mirror any required changes in the sample ballots.

Plaintiffs also contend that accepting defendants' argument will lead to an absurd result which is contrary to the Legislature's intent to protect Spanish-

12

speaking voters. They point out that having an official ballot that is only in English defeats the purpose of issuing bilingual sample ballots. In particular, they contend that, even if the sample ballot is bilingual, a voter whose primary language is Spanish will then enter a voting booth and be confronted with a ballot printed only in English. A voter who is confused or unable to read the ballot due to a language barrier cannot leave the voting booth to seek an explanation and then re-enter the booth. N.J.S.A. 19:52-3 (stating that a voter who leaves the voting booth may not thereafter re-enter the booth "on any pretext whatever."). Moreover, because the sample ballot advises voters that it is an exact copy of the official ballot, voters receiving a bilingual sample ballot can fairly expect that the official ballot will likewise be bilingual.[5]

Both sides have colorable arguments to make in this case. However, bearing in mind that our polestar is the Legislature's intent, that the election laws are to be construed liberally with an eye to facilitating rather than obstructing the right to vote, and that absurd results are to be avoided in statutory

---

[5] We note that by statute the county clerks are to begin sending out mail-in ballots "on or before the 45th day before an election is held." N.J.S.A. 19:63-9(a). However, sample ballots need not be mailed to voters until the Wednesday before the primary day. N.J.S.A. 19:23-34. As a result, if the mail-in ballots are not bilingual, voters whose primary language is Spanish will first receive an English-only mail-in ballot several weeks before the primary, but they will not receive a Spanish translation until a few days before the election.

construction, we conclude that plaintiffs have the better arguments. As a practical matter, it makes no sense to provide bilingual sample ballots because voters are not fluent in English, but to expect those same voters to navigate an official balloting process that is English-only. We will not presume that the Legislature intended that result. Rather, we presume that the Legislature, being familiar with its own enactments, would have expected that the "facsimile" language pertaining to sample and official ballots would result in the official ballots mirroring the sample ballots where the Legislature required the sample ballots to be printed in both Spanish and English. We acknowledge that if we have misconstrued the Legislature's purpose, the Legislature is free, as always, to amend the statutes to clarify its intent.

We reverse the order on appeal insofar as it denied plaintiffs' application for prospective relief, and we remand this matter to the trial court for the limited purpose of entering an order conforming to this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4883-17T4