NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1500-21
                A-1710-21

STATE SHORTHAND
REPORTING SERVICES,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT,

      Respondent-Respondent.

_____

JERSEY SHORE REPORTING,
LLC,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT,

      Respondent-Respondent.

_____

> **APPROVED FOR PUBLICATION
> AS REDACTED**
>
> **February 12, 2024**
>
> **APPELLATE DIVISION**

Submitted  (A-1500-21)  and  Argued  (A-1710-21)
January 16, 2024 — Decided February 12, 2024

Before Judges Mawla, Marczyk, and Chase.

On appeal from the New Jersey Department of Labor and Workforce Development, Docket Nos. 14-001 and 14-003.

Martin Melody, LLC, attorneys for appellant State Shorthand Reporting Services, Inc. in A-1500-21 (Eugene J. Melody, of counsel; Nancy S. Martin, on the briefs).

James Prusinowski argued the cause for appellant Jersey Shore Reporting, LLC in A-1710-21 (Trimboli & Prusinowski, LLC, attorneys; James Prusinowski and Brittany Rose Naimoli, on the briefs).

Ryne Anthony Spengler, Deputy Attorney General, argued the cause for respondent Department of Labor and Workforce Development (Matthew J. Platkin, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Kendall James Collins, Deputy Attorney General, on the briefs).

Einhorn, Barbarito, Frost & Botwinick, PC, attorneys for amicus curiae Certified Court Reporters Association of New Jersey in A-1710-21 (Andrew Seth Berns, of counsel and on the brief; Matheu D. Nunn, on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

In this appeal, as an issue of first impression, we are asked to consider whether N.J.S.A. 43:21-19(i)(10)—from the time of its enactment in 2010—provides an exemption for court reporters under the Unemployment Compensation Law ("UCL"), N.J.S.A. 43:21-1 to -71, or whether court reporters

must still establish a Federal Unemployment Tax Act ("FUTA") exemption pursuant to N.J.S.A. 43:21-19(i)(1)(G). For the reasons set forth below, we have determined N.J.S.A. 43:21-19(i)(10) does provide such an exemption and there is no requirement for court reporters to establish a FUTA exemption.

We consolidate these two appeals for the purpose of issuing a single opinion. Petitioner Jersey Shore Reporting, LLC ("JSR") appeals from a December 31, 2021 final administrative action of the Commissioner of the Department of Labor and Workforce Development ("DOL") finding JSR liable for contributions under the UCL. Petitioner State Shorthand Reporting Services ("SSRS") also appeals from the Commissioner's December 31, 2021 final administrative action finding SSRS responsible for contributions under the UCL. Although we conclude SSRS and JSR are entitled to an exemption under N.J.S.A. 43:21-19(i)(10), the DOL audited SSRS and JSR for time periods both before and after that statute's January 16, 2010 effective date. We conclude the exemption applies to the audit dates after January 16, 2010.

Regarding the audit periods prior to January 16, 2010, we address in the unpublished portion of this opinion whether JSR and SSRS satisfied N.J.S.A. 43:21-19(i)(6)(A) to (C) ("the ABC test") for the purpose of establishing that the reporters were independent contractors during that time period. We determine the Commissioner did not act in an arbitrary or capricious manner in

finding petitioners failed to satisfy the ABC test. Accordingly, we reverse in part, affirm in part, and remand for the Commissioner to recalculate the assessments owed by petitioners consistent with this opinion.

I.

A.

We derive the following from the record as it pertains to JSR. JSR is a registered court reporting agency that provides legal transcription services to attorneys, courts, and public agencies. The owners of JSR are not court reporters and therefore only handle administrative matters and brokering the services of court reporters. JSR fills numerous court reporting jobs each day and solicits reporters with a mass email based on reporters' preference concerning the location of the job and days and hours they are available. Generally, the first reporter to respond gets the assignment. Reporters are not forced to take an assignment and do not suffer any consequences for not agreeing to take a job. If JSR cannot fill a slot, it reaches out to other agencies. Reporters are provided the time and location of an assignment, but no specific instructions.

Once an event is completed, the reporter will inform JSR as to how many transcripts have been requested, and JSR prints, delivers, and bills for the services. Reporters can be compensated for an appearance, or an hourly rate when no transcript is ordered, or on a per-page rate. Reporters who work with

JSR also work with other agencies. The reporters provide their own stenographic machines. JSR does not: have policies or procedures for reporters; require reporters to work a certain number of hours; provide supplies; proofread reporters' work; or pay for supplies or continuing education.

In August 2013, following an audit, the DOL assessed JSR for $39,236.06 in unpaid contributions to the DOL's unemployment and disability benefit funds as a result of an audit from 2008-2010.[1] In January 2015, JSR moved for summary decision, asserting it was not liable for the contributions. The administrative law judge ("ALJ") determined there were genuine issues of material fact regarding whether the ABC test was met that necessitated a hearing regarding JSR's liability for 2008 and 2009. The ALJ granted JSR's motion for summary decision for the 2010 time period, finding N.J.S.A. 43:21-19(i)(10) "amended the UCL . . . to specifically exempt services performed by legal transcribers or court reporters irrespective of a parallel exemption under" the FUTA.

On April 23, 2018, the DOL requested the Commissioner review the ALJ's initial decision. On July 19, 2018, the Commissioner issued a decision and

[1] The parties unsuccessfully attempted to mediate. In May 2014, JSR moved for leave to appeal because the Office of Administrative Law ("OAL") failed to transfer the contested case for a hearing. In May 2014, we ordered the case transferred to the OAL for a hearing as a contested case.

accepted the ALJ's denial of summary decision for the audit years of 2008 and 2009 but rejected the ALJ's summary decision for the audit year of 2010 based on N.J.S.A. 43:21-19(i)(10). The Commissioner instead relied on N.J.S.A. 43:21-19(i)(1)(G), which states:

> Notwithstanding any other provision of this subsection, service in this State with respect to which the taxes required to be paid under any federal law imposing a tax against which credit may be taken for contributions required to be paid into a state unemployment fund or which as a condition for full tax credit against the tax imposed by the [FUTA] is required to be covered under the [UCL] . . . .

According to the Commissioner, N.J.S.A. 43:21-19(i)(1)(G) provides the mere existence of a state exemption under N.J.S.A. 43:21-19(i)(10) is not enough, and there must also be a parallel FUTA exemption to be relieved of the obligation to pay unemployment taxes.

B.

SSRS is also a court reporting agency that provides transcription services to various entities. It notes court reporters are "strictly regulated" and are licensed through the Department of Consumer Affairs. They must pass a test administered through a national court reporting association to become licensed in New Jersey. The owner and operator of SSRS testified:

> She maintains a list of certified court reporters and assigns jobs to cover a court reporting project on an as needed basis. Most of the court reporters may work for

A-1500-21

6

several different court reporting agencies at any given time and do not work exclusively for [SSRS]. In addition, they may accept or reject any assignment that [SSRS] offers them. Once a reporter accepts a job, they are given the date, time[,] and location of the job. The reporters are responsible for their own equipment, travel[,] and other job-related expenses. Once a reporter transcribes a proceeding, he or she emails it to [SSRS] for delivery to the client. [SSRS] handles all the billing.

SSRS maintains it does not control or provide instructions for court reporters. It asserts the reporters operate independently, are free to work whenever they want, and set their own work schedule.

In August 2013, the DOL assessed SSRS for unpaid contributions to unemployment and disability funds for the periods of 2006-2008 and 2011-2014. Based on an audit of those time periods, SSRS had unpaid contributions of $104,116.45—$38,340.44 for 2006-2008 and $65,776.01 for 2011-2014. SSRS appealed, and the matter was transferred to the OAL for a hearing before an ALJ as a contested case. The ALJ ultimately determined, based on the Commissioner's prior decision in the JSR matter, the exemption under N.J.S.A. 43:21-19(i)(10) requires a parallel FUTA exemption.

## II.

## A.

JSR and SSRS argue they meet the exemption under N.J.S.A. 43:21-19(i)(10) and therefore are not liable. They argue the statutory language is clear

and unambiguous and that services provided by certified court reporters should not be considered employment subject to the UCL. Moreover, the legislative history of N.J.S.A. 43:21-19(i)(10) supports this interpretation.

JSR contends the Commissioner erred in finding N.J.S.A. 43:21-19(i)(1)(G) applies to N.J.S.A. 43:21-19(i)(10), thus requiring court reporters to establish a FUTA exemption. It argues the statute's context and relationship to surrounding provisions shows N.J.S.A. 43:21-19(i)(1)(G) does not apply to every provision in N.J.S.A. 43:21-19(i). According to JSR, the statute's hierarchy shows N.J.S.A. 43:21-19(i)(1)(G), a sub-sub-section, is contained in and applies only to the provisions in subsection N.J.S.A. 43:21-19(i)(1). That is, the provision states it applies "[n]otwithstanding any other provision of this subsection," but JSR contends that it is meant to apply to the actual subsection of N.J.S.A. 43:21-19(i)(1), not the entire section of N.J.S.A. 43:21-19(i).

JSR argues the Legislature intended to amend the statute to remove the FUTA exemption from N.J.S.A. 43:21-19(i)(10) requirements. If N.J.S.A. 43:21-19(i)(1)(G) imposed the FUTA exemption on all of N.J.S.A. 43:21-19(i), JSR argues there would have been no modification to the statute. A FUTA exemption was required prior to the 2010 amendment, so it follows the Legislature amended the statute to exempt court reporters. Requiring reporters to prove a FUTA exemption would render the 2010 amendment meaningless.

JSR argues if the Legislature wanted to require a FUTA exemption on all categories under the statute, it would have clearly articulated the requirement. For example, N.J.S.A. 43:21-19(i)(7), which provides for twenty-seven exemptions, qualifies the exemptions, noting they are available "[p]rovided that such services are also exempt under the [FUTA] . . . ." JSR notes that if N.J.S.A. 43:21-19(i)(1)(G) applied to the entire statute, N.J.S.A. 43:21-19(i)(7) would be redundant as it refers to the same tax credits and FUTA. As such, JSR and SSRS assert the language of N.J.S.A. 43:21-19(i)(10) is clear and unambiguous, and court reporting services are statutorily exempt from unemployment taxes.

Amicus curiae Certified Court Reporters Association of New Jersey ("CCRA") also contends N.J.S.A. 43:21-19(i)(10) is clear on its face, and the legislative history explains that court reporters are now considered independent contractors. Moreover, there is no basis to continue to require a corresponding FUTA exemption under N.J.S.A. 43:21-19(i)(1)(G) given the enactment of N.J.S.A. 43:21-19(i)(10). Furthermore, the Commissioner's interpretation would render the amendment superfluous, and if the Legislature intended for the FUTA exemption to still apply, there would have been no need to amend the statute.

B.

Although we review administrative decisions with a deferential standard of review, "a reviewing court is 'in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (alteration in original) (quoting Dep't of Children & Fams. v. T.B., 207 N.J. 294, 302 (2011)). "[If] an agency's determination . . . is a legal determination, the appellate court's review is de novo." K.K. v. Div. of Med. Assistance and Health Servs., 453 N.J. Super. 157, 161 (App. Div. 2018) (alteration in original) (quoting L.A. v. Bd. of Educ. of Trenton, Mercer Cnty., 221 N.J. 192, 204 (2015)).

"The overriding goal" of statutory interpretation "is to determine . . . the intent of the Legislature, and to give effect to that intent." State v. Hudson, 209 N.J. 513, 529 (2012). We begin with the understanding "the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning." Ibid. "Where the plain language of a statute is clear, we enforce the statute as written." Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

Moreover, "[i]f the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources." Hudson, 209 N.J. at 529. "[E]xtrinsic aids may not be used to create ambiguity when the

plain language of the statute itself answers the interpretative question; however, when the statutory language results in more than one reasonable interpretation, then resort may be had to other construction tools . . . in the analysis." Id. at 529-30 (citing State v. Shelley, 205 N.J. 320, 323-24 (2011)). These may "includ[e] legislative history, committee reports, and contemporaneous construction." DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

N.J.S.A. 43:21-19(i)(10) in pertinent part provides:

> Services performed by a legal transcriber, or certified court reporter certified pursuant to P.L.1940, c.175 [N.J.S.A. 45:15B-1 to -14)], shall not be deemed to be employment subject to the [UCL], [N.J.S.A. 43:21-1 to -71], if those services are provided to a third party by the transcriber or reporter who is referred to the third party pursuant to an agreement with another legal transcriber or legal transcription service, or certified court reporter or court reporting service, on a freelance basis, compensation for which is based upon a fee per transcript page, flat attendance fee, or other flat minimum fee, or combination thereof, set forth in the agreement.
>
> [(Emphasis added).]

The express language of N.J.S.A. 43:21-19(i)(10) provides that services performed by court reporters "shall not be deemed to be employment subject to" the UCL. This provision is not qualified by reference to any FUTA exemption. Prior to 2010, under N.J.S.A. 43:21-19(i)(7)(Y), court reporters were also

11

exempt, provided they were "also exempt under . . . FUTA . . . ." N.J.S.A. 43:21-19(i)(7)(Y) (2002).  We presume the Legislature understood the implications of removing court reporters from N.J.S.A. 43:21-19(i)(7)(Y) and the corresponding FUTA mandate and placing the amendment in a different section, specifically indicating that court reporting services are not to be considered employment under the UCL.  This amendment was designed so that court reporters would no longer be required to establish a FUTA exemption pursuant to N.J.S.A. 43:21-19(i)(7) and were, by the specific terms of the amendment, not to be considered employees, but rather independent contractors.  The Commissioner's interpretation is at odds with the plain language of the statute.

The DOL asserted before the Commissioner that the Legislature may have been "well intentioned" in adopting N.J.S.A. 43:21-19(i)(10) and attempting to grant an exemption to court reporters, but the Legislature was unsuccessful because N.J.S.A. 43:21-19(i)(1)(G) still requires that petitioners establish a FUTA exemption.  At oral argument, the DOL claimed the amendment set forth in N.J.S.A. 43:21-19(i)(10) was effectively meaningless.

It is a "well-established canon of statutory interpretation" that the Legislature is presumed to know the "judicial construction of its enactments." Johnson v. Scaccetti, 192 N.J. 256, 276 (2007) (quoting DiProspero, 183 N.J. at 494), abrogated on other grounds, Cuevas v. Wentworth Grp., 226 N.J. 480, 506

A-1500-21

12

(2016). Moreover, "[t]he Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose." Correa, 458 N.J. Super. at 580. In attempting to harmonize more recent amendments in the context of existing statutory provisions, as always "[w]e will 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (second alteration in original) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

The Commissioner's interpretation of N.J.S.A. 43:21-19(i)(10) indicates the Legislature failed to recognize the requirement under N.J.S.A. 43:21-19(i)(1)(G) for an employer to still establish a FUTA exemption. The DOL asserted there are no scenarios in which the new statute, N.J.S.A. 43:21-19(i)(10), would apply to court reporters that was distinct from the operation of the prior exemption under N.J.S.A. 43:21-19(i)(7)(Y). We reject such an interpretation, which would render N.J.S.A. 43:21-19(i)(10) meaningless. N.J.S.A. 43:21-19(i)(10) must be read in harmony with N.J.S.A. 43:21-19(i)(7)(Y). The Legislature was fully aware of the prior requirement for court reporters to establish a FUTA exemption under N.J.S.A. 43:21-19(i)(7)(Y), which is why it amended the statute to remove the requirement for a FUTA

exemption under N.J.S.A. 43:21-19(i)(10). The Legislature placed N.J.S.A. 43:21-19(i)(10) in a separate section, presumably to remove it from N.J.S.A. 43:21-19(i)(7), which requires a corresponding FUTA exemption. Moreover, we agree with JSR that the requirement to establish a FUTA exemption under N.J.S.A. 43:21-19(i)(1)(G) only applies to that specific subsection.

Although we agree a sensible reading of N.J.S.A. 43:21-19(i)(10) provides an exemption for court reporters, to the extent the statutory language results in more than one reasonable interpretation, the legislative history unequivocally establishes the Legislature intended to dispense with the requirement to establish a FUTA exemption. The Senate Labor Committee statement provided:

> [T]he bill makes an individual who is a legal transcriber and who works on a freelance basis, compensation for which is based upon a fee per transcript page, flat attendance fee, or other flat minimum fee, or combination thereof, ineligible for unemployment insurance (UI) benefits and thus not subject to UI taxes. The bill provides the exemption to all such individuals categorically without requiring a demonstration that particular individuals are self-employed under the standards provided by either the State UI statute or federal tax rules.
>
> . . . .
>
> The amendments also remove the requirement that the exemption applies only if there is a parallel exemption under federal UI law or if the individuals are found to be self-employed by the IRS under its tax rules.

[<u>S. Labor Comm. Statement to S. 825</u> (May 4, 2009) (emphasis added).]²

The legislative history is unambiguous regarding the elimination of the requirement for a FUTA exemption and bolsters our interpretation of the statute. Accordingly, we reverse the Commissioner's holding with respect to the applicability of N.J.S.A. 43:21-19(i)(10) and conclude petitioners are exempt from the time of the enactment of the statute in 2010. We remand for the Commissioner to calculate the assessment regarding those audit periods after the enactment of N.J.S.A. 43:21-19(i)(10).

III.

**[At the direction of the court, the published version of this opinion omits Part III. <u>R.</u> 1:36-3.]**

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

² The Assembly Labor Committee statement closely mirrors the Senate's legislative history. <u>See</u> <u>A. Labor Comm. Statement to A. 3770</u> (Jan. 4, 2010).

A-1500-21

15