# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4386-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOHN FARKAS,

     Defendant-Appellant.

_____

Submitted March 7, 2022 – Decided March 17, 2022

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 95-05-0907.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

In 1996, defendant John Farkas pleaded guilty to fourth-degree criminal sexual contact with a seventeen-year-old victim, N.J.S.A. 2C:14-3(a), and third-degree criminal restraint, N.J.S.A. 2C:13-2. The original judgment of conviction showed the court imposed a sentence of 364 days in the county jail as a condition of probation. In 2006, the court amended the judgment of conviction to order defendant's compliance with Megan's Law, N.J.S.A. 2C:7-1 to -23, which is a mandatory sentence for a conviction for criminal sexual contact with a minor. See N.J.S.A. 2C:7-2(a) and (b)(2). Defendant appeals from orders entered in 2020 denying his motion to correct what he claimed is an illegal sentence — the requirement he comply with Megan's Law — and denying his motion to withdraw his 1996 guilty plea. We affirm the court's order denying defendant's motion to correct an illegal sentence, vacate the order denying defendant's motion to withdraw his guilty plea, and remand for a hearing of defendant's plea withdrawal motion and, if necessary, entry of a revised judgment of conviction accurately reflecting the offenses for which he was convicted and the sentence imposed.

I.

Prior to attempting to set forth the pertinent facts, we note the task is rendered difficult by the parties' failure to comply with Rule 2:6-1. The Rule

provides that the parties' appendices "shall contain" all docket entries in the trial court proceedings, R. 2:6-1(a)(1)(B), and "such other parts of the record, excluding the stenographic transcript, as are essential to the proper consideration of the issues," R. 2:6-1(a)(1)(I).

Here, we are asked to review orders entered following the filing of two motions and yet the parties' appendices do not include any motion papers or any other discernable record showing the pleadings, exhibits, and other documents presented to the motion court. Defendant's statements of fact in his brief on appeal are not tethered to citations to any certification, affidavit, or other competent evidence. See R. 1:6-6. Instead, defendant cites only to the arguments of counsel before the motion court and to documents in his appendix. However, he fails to make any showing the documents in his appendix were submitted to the motion court, and, although he relies on the documents in support of his factual contentions, he fails to cite to any competent evidence presented to the motion court establishing their authenticity. See ibid.; see also Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 600 (App. Div. 2011) (explaining a trial court should not consider a "document unless it was authenticated by an affidavit or certification based on personal knowledge").

Similarly, the State includes documents in its appendix, and relies on them to support its factual assertions, but it presents no competent evidence establishing their authenticity, and it makes no showing they were presented to the motion court. In support of its arguments on appeal, the State also relies on statements defendant allegedly made during a proceeding in another criminal case. The State refers to the transcript of the proceeding in its merits brief but fails to include the transcript in the record on appeal.

We are not "obliged to attempt review of an issue when the relevant portions of the record are not included." Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005). Nor can we properly decide the merits of an issue dependent on purported facts that are not supported by competent evidence presented on a complete record. We therefore limit our summary of the facts to those that appear uncontested and are also supported by what appear to be official court records, judgments, and orders, and we address only the legal issues that may be fairly decided based on those facts.

In 1996, defendant pleaded guilty to fourth-degree criminal sexual assault of a seventeen-year-old victim, N.J.S.A. 2C:14-3(a), and third-degree criminal

restraint, N.J.S.A. 2C:13-2. The record does not include a transcript of defendant's plea proceeding.

Defendant's plea form reflects that he agreed to plead guilty to fourth-degree criminal sexual contact and third-degree criminal restraint. Our Criminal Code mandated defendant's sentence for criminal sexual contact with a minor include the requirement that he comply with the requirements of Megan's Law, N.J.S.A. 2C:7-2(a) and (b)(2),[1] but the plea form does not include any reference to Megan's Law. The plea form also makes no mention of the special sentence of community supervision for life that was mandatory at the time for convictions for certain sexual offenses.

Defendant's November 14, 1996 judgment of conviction is inconsistent with his plea form. The judgment of conviction correctly shows defendant pleaded guilty to third-degree criminal restraint, but it also shows defendant pleaded guilty to fourth-degree aggravated criminal sexual contact instead of the fourth-degree criminal sexual contact offense referenced in the plea form. The judgment of conviction also did not order defendant's compliance with Megan's

---

[1] N.J.S.A. 2C:7-2(a) provides in part that an individual convicted of a "sex offense" shall be required to comply with the registration and reporting requirements of Megan's Law. Criminal sexual contact with a victim who is a minor is defined as a "sex offense" under N.J.S.A. 2C:7-2(b)(2).

A-4386-19

Law even though that is a mandatory requirement for a conviction for fourth-degree criminal sexual contact with a minor. N.J.S.A. 2C:7-2(b)(2). The judgment of conviction otherwise shows defendant was sentenced in accordance with his plea agreement to 364 days as a condition of probation.

In September 2006, a judge different from the one who accepted defendant's plea and imposed sentence, entered an order amending the 1996 judgment of conviction. The amended judgment of conviction added the requirement that defendant serve the special sentence of parole supervision for life (PSL) for his conviction, as reflected on the 1996 judgment of conviction, for aggravated criminal sexual contact.[2] The amended judgment of conviction did not impose a requirement that defendant comply with Megan's Law.

The judge who entered the amended judgment of conviction subsequently ordered a further amendment to the judgment of conviction to reflect defendant was convicted of fourth-degree criminal sexual contact and not the purported

---

[2] At the time of defendant's 1996 conviction, service of community supervision for life was mandatory for a conviction of certain sexual offenses, including aggravated criminal sexual contact. N.J.S.A. 2C:43-6.4(a) (1996). Community supervision for life was not an authorized sentence for a conviction for fourth-degree criminal sexual contact. Effective January 14, 2004, N.J.S.A. 2C:43-6.4(a) was amended, replacing community supervision for life with PSL as a mandatory condition of sentences imposed for certain sexual offenses, including aggravated criminal sexual contact. L. 2003, c. 267, § 1.

aggravated fourth-degree criminal sexual contact offense shown in the 1996 judgment of conviction and 2006 amended judgment of conviction.[3]

Although its order directed the correction of the amended judgment of conviction to reflect defendant was convicted of fourth-degree criminal sexual contact, the court did not vacate the requirement in the 2006 amended judgment of conviction that defendant serve the special sentence of PSL that had been imposed based on the erroneous finding defendant was convicted of aggravated criminal sexual contact. See N.J.S.A. 2C:43-6.4(b). Instead, the court's order directed for the first time an amendment of the judgment of conviction requiring defendant's compliance with the requirements of Megan's Law.

In 2020, it appears—we do not have the motion papers—defendant moved for correction of an illegal sentence. See R. 3:21-10(b)(5). Based on the transcripts of the motion hearing, we discern defendant made two arguments. First, he claimed the judgment of conviction erroneously stated he was convicted of aggravated criminal sexual contact and, for that reason, in 2006 the court erroneously amended the judgment of conviction to require his service of the

---

[3] Our Criminal Code has never included a fourth-degree aggravated criminal sexual contact offense. Aggravated criminal sexual contact has always been a third-degree crime. L. 1979, c. 178, § 27. Criminal sexual contact is a fourth-degree crime. N.J.S.A. 2C:14-3(b).

special sentence of PSL under N.J.S.A. 2C:43-6.4(a). Defendant correctly argued that although PSL is a mandatory requirement for a conviction for aggravated criminal sexual contact, it is not a sentence authorized by law for an individual convicted of fourth-degree criminal sexual contact.[4] See N.J.S.A. 2C:43-6.4(a).

Although it appears there is no transcript available of defendant's 1996 plea proceeding, the parties did not dispute, and the motion court found, the plea form established defendant pleaded guilty to fourth-degree criminal sexual contact. Therefore, the original and 2006 amended judgments of conviction erroneously reflected he was convicted of aggravated criminal sexual contact. In its opinion from the bench, the court directed an amendment of defendant's judgment of conviction to reflect the fourth-degree criminal sexual contact

---

[4] Defendant did not assert, at least at oral argument before the motion court, that imposition of the special sentence of PSL was also not a sentence authorized by law applicable to his 1996 conviction because PSL first became effective in 2004. See State v. Perez, 220 N.J. 423, 439-42 (2015) (explaining PSL cannot be imposed as a condition of a sentence for an offense committed prior to the January 14, 2004 effective date of the amendment to N.J.S.A. 2C:43-6.4 that eliminated community supervision for life and replaced it with PSL). If defendant had actually pleaded guilty to, and had been convicted of, an offense committed in 1996 that was subject to the requirements of N.J.S.A. 2C:43-6.4(a), the court could only have required defendant serve the special sentence of community supervision for life under the statute. See ibid.

offense to which he pleaded, and, because neither community supervision for life nor PSL are authorized dispositions for a conviction of criminal sexual contact, see N.J.S.A. 2C:43-6.4(a), the court vacated the requirement defendant serve the special sentence of PSL imposed in the 2006 amended judgment of conviction.[5]

Defendant's second argument in support of his motion for correction of an illegal sentenced centered on the 2006 order's requirement that he comply with Megan's Law. Defendant claimed imposition of a sentence requiring compliance with Megan's Law is mandated for a conviction of criminal sexual

---

[5] As noted, the record shows that in its 2006 order the court directed an amendment of the judgment of conviction "to correct the designation of" the aggravated criminal sexual contact charge to fourth-degree criminal sexual contact. It is unclear why the motion court in 2020 was required to address the issue anew and, although the motion court ordered the same relief and further determined the judgment of conviction should be amended to delete the requirement that defendant serve the special sentence of PSL, the record does not include a written order memorializing the court's decision on those issues or a final amended judgment of conviction accurately reflecting defendant's conviction for fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), eliminating the requirement that he serve the special sentence of PSL, and imposing the requirement that defendant comply with Megan's Law. We therefore remand, in part, for the court to ensure there is a final amended judgment of conviction that accurately reflects the offenses for which he was convicted and the appropriate sentencing conditions and requirements attendant to his convictions. If such a judgment of conviction does not exist, the court shall enter one, unless it otherwise determines defendant's plea should be withdrawn.

A-4386-19

contact only where the victim is a minor. See N.J.S.A. 2C:7-2(b)(2). He asserted a minor is an individual under the age of sixteen and, therefore, his conviction for criminal sexual contact with the seventeen-year-old victim did not permit imposition of Megan's Law requirements as a condition of his sentence. He also argued he could not be properly sentenced to comply with Megan's Law because he was not advised he would be subject to its requirements when he pleaded.

In an opinion from the bench, the court rejected defendant's argument his conviction for criminal sexual contact on a seventeen-year-old victim did not require imposition of a Megan's Law sentence under N.J.S.A. 2C:27-2(b)(2). The court found no support for defendant's claim a minor is someone under the age of sixteen, and the court concluded that because the seventeen-year-old victim was a minor, N.J.S.A. 2C:27-2(b)(2) mandated that defendant's sentence include his compliance with Megan's Law. Thus, the court determined defendant's compliance with Megan's Law constituted a sentence authorized by law, and the court denied defendant's motion to correct what he claimed was an illegal sentence.

The court did not address the merits of defendant's other argument—that his compliance with Megan's Law was an illegal sentence because he was not

informed he would be required to comply with Megan's Law when he pleaded. The court determined defendant's claim was more properly made in support of a motion to withdraw his 1996 guilty plea. Thus, the court entered an order denying defendant's motion to the extent it sought a determination his Megan's Law sentence was illegal, and the court directed the filing of a separate motion to withdraw his guilty plea.

Again, we have not been supplied with any papers submitted in support of defendant's motion to withdraw his guilty plea, see R. 2:6-1(a)(1), but we discern from the transcript of the motion hearing that defendant contended he was entitled to withdraw his plea because he had not been advised he would be subject to the requirements of Megan's Law for his conviction for criminal sexual contact with a minor, see N.J.S.A. 2C:43-6.4(b), when he pleaded. Defendant also claimed he demonstrated an entitlement to withdraw his plea based on the factors enunciated by the Court in State v. Slater, 198 N.J. 145 (2009).[6]

---

[6] The four Slater factors are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58.

In a detailed decision from the bench based on a record we have not been supplied on appeal, the court made findings of fact as to each of the Slater factors, and concluded they did not weigh in favor of defendant's motion to withdraw his 1996 guilty plea. The court entered an order denying defendant's motion, and this appeal followed.

Defendant makes the following arguments:

POINT I

THE TRIAL COURT ERRED IN DENYING THE MOTION TO CORRECT THE ILLEGAL SENTENCE BECAUSE THE VICTIM WAS NOT A MINOR; THEREFORE, THE IMPOSITION OF MEGAN'S LAW REQUIREMENTS WAS ILLEGAL.

POINT II

IF THE TRIAL COURT CORRECTLY DETERMINED THAT IMPOSITION OF MEGAN'S LAW WAS LAWFULLY REQUIRED, THEN THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR WITHDRAWAL OF HIS GUILTY PLEA BECAUSE HE DID NOT BARGAIN FOR A SENTENCE THAT INCLUDED MEGAN'S LAW.

II.

Defendant argues he could not properly be sentenced to comply with the requirements of Megan's Law because that sentence is authorized for a conviction for fourth-degree criminal sexual contact where the victim of the

12

crime is a minor. See N.J.S.A. 2C:7-2(b)(2). He contends the victim of his offense was seventeen years old and does not qualify as a minor under N.J.S.A. 2C:7-2(b)(2), and therefore his Megan's Law sentence is illegal because it is not authorized by law. See State v. Hyland, 238 N.J. 135, 145 (2019) (explaining "[t]here are two categories of illegal sentences: those that exceed the penalties authorized for a particular offense, and those that are not authorized by law").

Whether a sentence is illegal is an issue of law that we review de novo. State v. Drake, 444 N.J. Super. 265, 271 (App. Div. 2016). We must apply the law in our analysis, and we "afford no special deference to the trial court's interpretation of the law or the legal consequences that flow from established facts." Hyland, 238 N.J. at 143.

Defendant's argument requires that we interpret that part of N.J.S.A. 2C:7-2(b)(2) requiring imposition of a Megan's Law sentence for a conviction for "criminal sexual contact pursuant to N.J.S.A. 2C:14-3(b) if the victim is a minor." Defendant does not dispute he was convicted of committing criminal sexual contact. He claims only that to qualify as a minor under N.J.S.A. 2C:7-2(b)(2), the victim must be under the age of sixteen.

When interpreting a statute, "our primary goal is to discern the meaning and intent of the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010) (citing

State v. Smith, 197 N.J. 325, 332 (2009)).  Generally, "the best indicator of that intent is the plain language chosen by the Legislature."  Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  "Where the plain language of a statute is clear, we enforce the statute as written."  Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero, 183 N.J. at 492).

The term "minor" is not defined in Megan's Law, N.J.S.A. 2C:7-1 to -23, and it is not otherwise expressly defined in our Criminal Code.  We do not consider minor a "[t]echnical word[] or phrase[]," and we therefore apply "its generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1; see State v. Ferencsik, 326 N.J. Super. 228, 231 (App. Div. 1999) ("In the absence of a special meaning, the words in a statute are to be given their ordinary and well understood meaning.").

Minor has long been understood to refer to an individual who has not reached the age of majority.  See Black's Law Dictionary 1193 (11th ed. 2019) (defining minor as "[s]omeone who has not reached full legal age"); see also Black's Law Dictionary 997 (6th ed. 1990) (defining minor as "[a]n infant or person who is under the age of legal competence"); see also Black's Law Dictionary 899 (5th ed. 1979) (defining minor as "[a]n infant or person who is under the age of legal competence"); see also Black's Law Dictionary 1148 (4th

A-4386-19

ed. 1968) (defining minor as "[a]n infant or person who is under the age of legal competence").   Our Legislature has determined that eighteen is the age of majority in this State.   N.J.S.A. 9:17B-3 declares that, other than in limited defined circumstances of no relevance to our interpretation of N.J.S.A. 2C:7-2(b)(2), "every person [eighteen] or more years of age shall in all . . . matters and for all purposes be deemed an adult."   Thus, the plain, ordinary, and well-accepted meaning of minor in New Jersey is a person who is under the age of eighteen.

This interpretation is also consistent with the Legislature's use of the term "minor" in other provisions of the Criminal Code.   For example, N.J.S.A. 2C:25-19(a), in part, defines domestic violence as including a number of specified prohibited acts committed "by and adult or an emancipated minor."   N.J.S.A. 2C:25-19(e) defines "[e]mancipated minor" as "a person who is under the age of [eighteen] years of age but who has been married, has entered military service, has a child or is pregnant or has been previously declared by a court or an administrative agency to be emancipated."   Thus, in enacting that provision of the Criminal Code, the Legislature clearly expressed an understanding of the term "minor" that is consistent with the term's plain and ordinary usage — an individual who has not reached the age of majority, which is eighteen.

Similarly, the Legislature employed the term "unemancipated minor" in N.J.S.A. 2C:14-14 to refer to individuals who are under eighteen years of age. The statute provides that a victim of certain sexual offenses committed by an unemancipated minor shall not seek a temporary protective order pursuant to the Sexual Assault Survivor Protection Act of 2015, N.J.S.A. 2C:14-13 to -23. N.J.S.A. 2C:14-14(b)(1). Instead, the Act provides that where the offense was committed by an unemancipated minor, the victim may seek a protective order under the New Jersey Code of Juvenile Justice, 2A:4A-20 to -49, which is limited in its application to individuals who commit offenses while under the age of eighteen. See N.J.S.A. 2A:4A-25 (vesting jurisdiction in the Chancery Division, Family Part, over crimes, offenses, and violations committed by individuals who are under the age of eighteen). Thus, the Legislature's use of the term minor in N.J.S.A. 2C:14-14(b)(2) is clearly limited to individuals who have not yet reached the age of eighteen.

In State ex. rel. J.P.F., we considered a seventeen-year-old juvenile's argument that he should not be required to comply with Megan's Law based on his adjudication for committing criminal sexual contact under N.J.S.A. 2C:14-3(b) on a seventeen-year-old victim. 368 N.J. Super. 24, 26 (App. Div. 2004). We rejected the argument, finding it was not supported by the plain language

16

and requirements of N.J.S.A. 2C:7-2(a) and (b)(2).  Id. at 40-42.  We explained

that under N.J.S.A. 2C:7-2(b)(2), "[t]he Legislature has chosen to make criminal

sexual contact a Megan's Law offense only if the victim is a minor."  Id. at 41.

We held that even though defendant was a seventeen-year-old juvenile when he

committed the offense, "[t]he circumstances of the case provide[d] no occasion

for judicial interpretation of N.J.S.A. 2C:7-2(b)[(]2[)] at variance with its plain

language" because the victim, at age seventeen, was a minor.  Id. at 45.  We

discern no basis for a different holding here.

Defendant argues that the term "minor" in N.J.S.A. 2C:7-2(b)(2) should

be limited to individuals under the age of sixteen.  He contends that "minor" is

synonymous with "child" and, when he committed the crime in 1996, "child"

was defined, in N.J.S.A. 2C:24-4(b)(1) as "any person under [sixteen] years of

age."[7]  Defendant therefore argues we should interpret N.J.S.A. 2C:7-2(b)(2)

under that standard and, as a result, a Megan's Law sentence could be imposed

on a person convicted of criminal sexual contact in 1996 only if the victim was

under the age of sixteen.

---

[7]  N.J.S.A. 2C:24-4(b)(1) was amended in 2013 to change the definition of "child" to "any person under [eighteen] years of age."  L. 2013, c. 51, § 13.

A-4386-19

We reject defendant's argument because it ignores that application of the definition of child in N.J.S.A. 2C:24-4(b)(1) was expressly limited to the crime of endangering the welfare of a child in N.J.S.A. 2C:24-4; the statute defines the term "child" only "[a]s used in" N.J.S.A. 2C:24-4. The definition of "child" used in N.J.S.A. 2C:24-4 does not have application elsewhere in the Criminal Code, and defendant offers no other basis to conclude the definition has any relevance or application to the term "minor" employed by the Legislature in N.J.S.A. 2C:7-2(b)(2).

In sum, we are not persuaded by defendant's claim he could not be properly sentenced to Megan's Law compliance because the seventeen-year-old victim of the criminal sexual contact offense to which he pleaded is not a minor under N.J.S.A. 2C:7-2(b)(2). The court correctly denied his motion to correct an illegal sentence under Rule 3:21-10(b)(5) because imposition of the Megan's Law requirements was authorized by law and did not exceed the punishment authorized by law. See Hyland, 238 N.J. at 145.

III.

Defendant also argues the court erred by denying his motion to withdraw his 1996 guilty plea. He claims the court incorrectly applied the Slater factors in its denial of his motion, and the court erred by failing to find he did not

18

knowingly and voluntarily plead because he was never advised he would be required to comply with Megan's Law under N.J.S.A. 2C:7-2(b)(2).

When we review an order denying a motion to withdraw a guilty plea, "[a] trial judge's finding that a plea was voluntarily and knowingly entered is entitled to appellate deference so long as that determination is supported by sufficient credible evidence in the record." State v. Lipa, 219 N.J. 323, 332 (2014). An appellate court will reverse a trial court's decision denying a "defendant's request to withdraw their guilty plea . . . only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." Ibid. (quoting State v. Simon, 161 N.J. 416, 444 (1999)). "A denial of a motion to vacate a plea is 'clearly erroneous' if the evidence presented on the motion, considered in light of the controlling legal standards, warrants a grant of that relief." State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014) (quoting State v. Mustaro, 411 N.J. Super. 91, 99 (App. Div. 2009)).

Rule 3:9-2 sets forth the standards and requirements for a court's acceptance of a plea:

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such a plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made

voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

[R. 3:9-2.]

Compliance with the requirements of the Rule "ensure[s] that pleas are supported by a factual basis and are entered voluntarily and knowingly, that is, with a full understanding of the charge and the consequences of the plea." Slater, 198 N.J. at 154-55.

A court's "[c]onsideration of a plea withdrawal request can and should begin with proof that before accepting the plea, the [plea] court followed the dictates of Rule 3:9-2." Slater, 198 N.J. at 155. For example, in Slater, ibid., the Court cited State v. Barboza, where it was held that when a plea is accepted without the factual basis required under Rule 3:9-2, "the plea, the judgment of conviction, and the sentence must be vacated, the dismissed charges reinstated, and [the] defendant allowed to re-plead or to proceed to trial." 115 N.J. 415, 420 (1989).

"For a plea to be knowing, intelligent and voluntary" under Rule 3:9-2, "the defendant must understand the nature of the charge and the consequences of the plea." State v. Johnson, 182 N.J. 232, 236 (2005). In Johnson, the Court held that a defendant who pleaded guilty to offenses subject to the mandatory

periods of parole supervision required under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, was "entitled to seek the vacation of his [guilty] plea" because "the period of NERA parole supervision constitutes both a direct and penal consequence about which [the] defendant, in his plea colloquy and plea form, was not informed." Id. at 240-241. The Court, however, made clear that a defendant seeking to vacate his guilty plea based on being misinformed about the penal consequences must also show "he is prejudiced by enforcement of the agreement. The plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead." Id. at 241-42 (quoting State v. Howard, 110 N.J. 113, 123 (1988)) (internal citations omitted).

Where the trial court has not conducted an evidentiary hearing on a motion to withdraw a guilty plea, "we may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." O'Donnell, 435 N.J. Super. at 373. As noted, that task is made difficult here because the parties failed to provide the motion papers, see R. 2:6-1(a)(1), and the record on appeal lacks any affidavits, certifications, or other competent evidence establishing the facts upon which the parties relied before the motion court, see R. 1:6-6.

 A-4386-19

Nonetheless, we recognize the parties do not dispute the authenticity of the documents—including the plea form, judgments of conviction, and the 1997 letter from the plea and sentencing judge—that support a reasonable inference defendant may not have been informed of the Megan's Law consequences of his guilty plea to fourth-degree criminal sexual contact when he pleaded in 1996. In addition, the available record shows the court did not apply the correct legal standard in its analysis of defendant's plea withdrawal motion because, contrary to the Court's instruction in Slater, the motion court did not first determine if the plea court "followed the dictates of Rule 3:9-2." Slater, 198 N.J. at 155. That is, in its analysis of defendant's motion, the court erred by failing to first determine if defendant's plea was entered with a full understanding of the Megan's Law consequences of his conviction. See ibid.; see also State ex rel. B.P.C., 421 N.J. Super. 329, 356 (App. Div. 2011) (explaining a court considering a plea withdrawal motion where the defendant claims he was not informed of the Megan's Law consequences of the plea must determine if the plea was made with an understanding of those consequences).

Moreover, even assuming defendant was not aware of the Megan's Law consequences of his plea, the court did not consider or determine whether the failure to inform defendant about those consequences "under N.J.S.A. 2C:7-2

22

'materially affected his decision to plead guilty.'" B.P.C., 421 N.J. Super. at 356 (quoting Johnson, 182 N.J. at 244). As we explained in State v. J.J., a defendant who is not informed of the mandatory Megan's Law consequences of a plea shall be permitted to withdraw the plea subject to a hearing "for a determination whether a more detailed explication of the requirements of Megan's Law would have affected defendant's decision to plead guilty." 397 N.J. Super. 91, 103 (App. Div. 2007).

Here, despite the parties' non-compliance with Rule 2:6-1(a)(1), we are convinced the lack of any analysis by the court concerning whether defendant made a knowing decision to plead, and whether any purported lack of knowledge by defendant concerning the Megan's Law consequences of the plea materially affected defendant's decision to plead, B.P.C., 421 N.J. Super. at 356, warrant a remand for the court to reconsider defendant's motion to withdraw his guilty plea. It is also apparent there are factual disputes suggested by the documents provided in the appendices that are attendant to those issues and that require resolution at a plenary hearing.

We therefore vacate the court's order denying defendant's motion to withdraw his guilty plea and remand for a plenary hearing to determine if defendant's plea was made knowingly as required under Rule 3:9-2. If the court

23

determines defendant's plea was not made knowingly because he was not aware of the Megan's Law consequences of his conviction for fourth-degree criminal sexual contact of a minor, the court shall not set aside his guilty plea unless the court determines defendant carried his burden of establishing "how the omission of information about the registration requirements" under Megan's Law "'materially affected his decision to plead guilty.'" B.P.C., 421 N.J. Super. at 356 (quoting Johnson, 182 N.J. at 244); see also J.J., 397 N.J. Super. at 103. If the court concludes defendant is not entitled to withdraw his guilty plea based on those determinations, it shall then determine whether defendant is entitled to withdrawal of his plea based on its application of the Slater factors. See Slater, 198 N.J. at 157-58.

We do not express an opinion on the merits of any of the issues that will be considered by the court on remand, nor do we limit the parties' proofs at the remand hearing. The court shall decide defendant's motion anew on the evidence presented on remand, and the court shall conduct such proceedings as it deems appropriate and necessary to properly decide the issues presented by defendant's motion.

In sum, the court's order denying defendant's motion to correct an illegal sentence is affirmed. We vacate the court's order denying defendant's motion to

withdraw his guilty plea and remand for further proceedings, in accordance with this decision. The remand court shall take the steps necessary to ensure defendant's judgment of conviction accurately reflects the crimes for which he was convicted and the sentences imposed.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4386-19