IN THE MATTER OF COMMUTER OPERATING AGENCY'S DETERMINATION OF FINANCIAL RESULTS TO CARRIERS FOR THE CALENDAR YEAR 1977.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1978—Decided December 4, 1978.

312

Before Judges LYNCH, CRANE and HORN.

*Messrs. John D'Amico, Jr.* and *Marc F. Stuart,* co-counsel, argued the cause for appellants.

*Mr. Kenneth S. Levy,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Messrs. Kenneth S. Levy* and *Larry Filler,* Deputy Attorneys General, on the brief).

PER CURIAM. This is an appeal by two nonprofit associations of commuters and wives of commuters[1] (hereinafter "appellants") from what is termed by the Commuter Operating Agency (C.O.A.) the "Determination of Financial Results to Carriers for the Calendar Year 1977" (hereinafter "determination"), and from a 10% increase in Conrail passenger rail fares adopted by said agency pursuant thereto and effective October 1, 1978.

Appellants moved for a stay of the fare increase. By order dated September 27, 1978 this court denied the motion pending argument on the merits of the appeal to be had on October 31, 1978. However, the order denying the stay also provided that (a) Conrail was to furnish receipts to passengers of the amount of fares paid on or after October 1, 1978 so that, in the event the increase in fares was later found to be invalid, appropriate refunds could be made; (b) C.O.A. was to file with this court "all data (including quarterly and other reports and any other information) which C.O.A. considered in reaching its determination of April 19, 1978, concerning financial results to Conrail for providing passenger service in New Jersey during the calendar year 1977." See *N. J. S. A.* 27:1A–17. The order further provided: "Submission of such data shall be accompanied by affidavit stating in what manner said data was considered and in what respects it influenced said determination."

Appellants having made a prima facie showing that C.O.A. had failed to comply with the requirements of said statute, *N. J. S. A.* 27:1A–17, we required the data and affidavit in order to ascertain whether C.O.A. had complied with the mandate of the statute, which provides, so far as pertinent:

The agency annually shall investigate and determine the *financial results* to each rail carrier from providing passenger service during the *previous calendar year* and determine what action is re-

---

[1] Respectively, "The Irate Shore Commuters" and the "Commuters' Wives of Monmouth, Ocean and Middlesex Counties."

quired for each carrier to offset all or part *of any loss shown.* Such determination may include * * * (a) changes in * * * fares * * *. [Emphasis supplied]

Thereafter C.O.A. filed with this court copies of numerous documents, totalling 453 pages, together with two affidavits, one by William Whitehurst, vice-president of Peabody and Associates, consultants to C.O.A., and one by George Herkner, Jr., Assistant Director of the Division of Commuter Services in the Department of Transportation. The documents also included the report of the chief hearing examiner on the proposed determination.

Having heard the argument on the merits on October 31, 1978 and having examined the documents submitted, we conclude that C.O.A. has not complied with the statutory mandate of *N. J. S. A.* 27:1A–17. We conceive that the clear purpose of the provision was that C.O.A.: (1) investigate and determine the "financial results" to a rail carrier from providing passenger service during the previous calendar year (here 1977), to determine whether there has been a "loss" during that year, and (2) if such loss is found, whether it is appropriate to increase fares to offset all or part of any such loss.

We conclude that it is the intent of *N. J. S. A.* 27:1A–17 that C.O.A. shall reach its determination by use of *historical* data .(*i. e.,* the financial results of the preceding calendar year). The data submitted to this court does not demonstrate that such process was followed. Rather, the data indicates that C.O.A.'s determination was based on *prospective* needs or estimates as encompassed within a projected budget for the calendar year 1979.

C.O.A.'s contention is that it is unable to comply with *N. J. S. A.* 27:1A–17 because Federal Regulations (49 *C. F. R.* 1127.1 *et seq.*) somewhat subsume its obligation under the New Jersey statute. This is so, it is said, because C.O.A. cannot assure an adequate subsidy under the federal regulations if it acts on historical data. Rather, it says, for

the purpose of adequate subsidy it must act on *prospective* data contemplated in its budget. Thus C.O.A. finds an inherent conflict between the statute and the Federal Regulations. Moreover, C.O.A. claims that another section of the state law, namely, *N. J. S. A.* 27:1A–25, excuses compliance with § 17. *N. J. S. A.* 27:1A–25 provides, in pertinent part, that the agency may:

> (d) Have the power to receive and expend money from any Federal or State agency or instrumentality and from any private sources, in addition to the money appropriated by the Legislature; *notwithstanding any other provision of this act, to comply with Federal statutes, rules and regulations, and to qualify for and receive all forms of financial assistance available under Federal law to assure the continuance of, or for the support or improvement of, rail passenger service, rail freight service, motor bus service or other forms of special transportation service;* * * *.
> [Emphasis supplied]

■ We reject that contention for we find no conflict between the mandate of the statute and the Federal Regulations. We conclude that the statute and the Federal Regulations contemplate two separate functions — the statute to determine that the "financial results" for the previous calendar year show a loss, and, if so, whether fare increases are to be imposed to offset all or part of such loss. The Federal Regulations, on the other hand, establish the method by which the subsidy which may be needed in the future is to be determined. This contemplates prospective financial needs. Thus we conclude that the statute *N. J. S. A.* 27:1A–17 and 49 *C.F.R.* 1127.1 *et seq.* are independent of each other. Therefore, the mandate of this statute remains binding upon C.O.A.

We take cognizance of an argument advanced by appellants in addition to its insistence that C.O.A. failed to comply with *N. J. S. A.* 27:1A–17. This contention is that the phrase in this statute enjoining the agency to "investigate and determine the financial results" requires the agency to make an investigation which is tantamount to an audit of

the records of Conrail in order to verify its reported figures and financial results. We disagree.

In the absence of an explicit indication of a special meaning words utilized in a statute will be given their ordinary and well-understood meaning. *Service Armament Co. v. Hyland,* 70 *N. J.* 550, 556 (1976). "Investigate" is a verb of broad meaning, which may but does not necessarily include in its scope that type of verification which is sought through an audit. This view is fortified by the use of the word "auditing" in *N. J. S. A.* 27:1A–22, a different section of the Transportation Act of 1966, of which *N. J. S. A.* 27:1A–17 is a part.

We conclude on this point that the scope of the investigation mandated by the statute is within the discretion of C. O. A., subject only to review by a court for abuse of discretion.

Having determined that C. O. A. has not complied with *N. J. S. A.* 27:1A–17, the matter is remanded to that agency to make findings of fact and conclusions which shall determine what the books and record[2] of Conrail show for the calendar year 1977, *i. e.,* (1) the financial results to Conrail from providing passenger service in New Jersey for that year; (2) whether there was a loss in that year from providing such service; (3) the amount of such loss and how it is calculated; (4) why a fare increase averaging 10% starting October 1, 1978 was appropriate to offset all or part of any loss shown, and (5) the extent to which said increase will offset any such loss. These findings shall be submitted to this court by January 15, 1979.

We retain jurisdiction.

---

[2]With a reference to which books and records support its findings.