**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3457-24
      A-0908-25
      A-0910-25

COLLEGE ACHIEVE
PUBLIC SCHOOLS, INC.,

   Petitioner-Appellant,

v.

STATE OF NEW JERSEY,
OFFICE OF THE STATE
COMPTROLLER,

   Respondent-Respondent.

_____

COLLEGE ACHIEVE
PUBLIC SCHOOLS, INC.,

   Petitioner-Respondent,

and

COLLEGE ACHIEVE GREATER
ASBURY PARK CHARTER
SCHOOL, INC.,

   Nominal Petitioner-
   Respondent,

v.

STATE OF NEW JERSEY,
OFFICE OF THE STATE
COMPTROLLER,

      Respondent-Appellant.

_____

COLLEGE ACHIEVE
PUBLIC SCHOOLS, INC.,

      Petitioner-Respondent,

v.

STATE OF NEW JERSEY,
OFFICE OF THE STATE
COMPTROLLER,

      Respondent-Appellant.

_____

> Argued May 28, 2026 – Decided June 25, 2026
>
> Before Judges Mawla, Marczyk and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000196-24.
>
> On appeal from interlocutory orders of the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket Nos. C-000196-24 and C-000080-25.
>
> Christopher D. Adams argued the cause for College Achieve Public Schools, Inc., appellant in A-3457-24 and respondent in A-0908-25 and A-0910-25

(McCarter & English, LLP, attorneys; Christopher D. Adams, of counsel and on the briefs; Scott Weingart and Kieran T. Ensor, on the briefs).

Phoenix N. Meyers, Deputy Attorney General, argued the cause for State of New Jersey, Office of the Comptroller, respondent in A-3457-24 and appellant in A-0908-25 and A-0910-25 (Jennifer Davenport, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Phoenix N. Meyers and Leo R. Boerstoel, Deputy Attorneys General, on the briefs).

Jaryda Gonzalez argued the cause for College Achieve Greater Asbury Park Charter School, Inc., respondent in A-0908-10 (Johnston Law Firm, LLC, attorneys; Thomas O. Johnston and Jaryda Gonzalez, on the brief).

PER CURIAM

In A-3457-24, appellant College Achieve Public Schools, Inc. (CAPS), appeals from an order dated June 9, 2025, denying its motion to quash a subpoena issued by respondent the State of New Jersey Office of the State Comptroller (OSC). A-0910-25 is the OSC's appeal from a September 12, 2025 order staying the June 9 order. In A-0908-25, the OSC appeals from an October 1, 2025 order denying its motion to transfer the case to us for consolidation with A-3457-24. We consolidated the appeals for purposes of issuing one opinion.

By way of background, in 2005, the Office of the Inspector General (OIG) was created to investigate "alleged fraud, waste, abuse, or mismanagement of

3

A-3457-24

State funds"; "promote efficiency"; "identify cost savings"; and "prevent misconduct within the programs and operations of any governmental agency funded by, or disbursing, State funds." N.J.S.A. 52:15B-7, -1. In 2007, the OSC was formed as an independent agency to "conduct[] . . . routine, periodic, and random audits," as well as performance assessments of "all entities exercising executive branch authority, public institutions of higher education, independent State authorities, units of local government and boards of education." N.J.S.A. 52:15C-5. In 2010, the Legislature abolished the OIG and stated: "The functions, powers, and duties conferred upon, or required to be exercised by, the [OIG] are continued but such functions, powers, and duties are hereby transferred to and shall be exercised and performed by the [OSC]." N.J.S.A. 52:15C-21(c).

Charter schools are part of New Jersey's "program of public education." N.J.S.A. 18A:36A-2. These schools are managed by boards of trustees who, upon receiving a charter, are deemed "public agents authorized by the State Board of Education to supervise and control the charter school." N.J.S.A. 18A:36A-3(a). Charter schools receive State and local public funds, whereby sending school districts transfer shares of their funding to the receiving charter school on a per-student basis. N.J.S.A. 18A:36A-12.

CAPS is a private, non-profit corporation, which has vendor contracts with respondent CAPS-Asbury, a charter school, and other charter schools in the State. Through its vendor contracts, CAPS provides services to assist with schools' day-to-day management and administration. CAPS charges fees for its management and operations contracts and facilities it leases to the schools.

In 2024, CAPS-Asbury reported it paid CAPS a management fee of $1,062,395, which was the equivalent of 14.9% of its total share of State, local, and federal revenue for the year. The same year, reports alleged CAPS-Asbury mishandled public funds through nepotistic purchasing practices and payment of excessive salaries to school administrators, among other allegations. CAPS and CAPS-Asbury jointly commissioned the law firm of FBT Gibbons LLP, then known as Gibbons P.C., to investigate the allegations.

On November 15, 2024, the OSC served CAPS with a subpoena for documents containing twenty-three requests. In relevant part, the subpoena stated:

> This Subpoena is issued to [CAPS] – an entity that has been identified as the charter management organization [(CMO)] for [CAPS-]Asbury . . . and other schools in the [CAPS] network – pursuant to the authority granted to the [OSC] as set forth in N.J.S.A. 52:15B-1 [to -16] and N.J.S.A. 52:15C-1 [to -24]. See, e.g., N.J.S.A. 52:15B-7 (authorizing [the OIG] "to receive and investigate complaints concerning alleged fraud, waste,

abuse, or mismanagement of State funds, designed to provide increased accountability[,] integrity, and oversight of: all recipients of State funds") (emphasis added); N.J.S.A. 52:15B-1 (setting forth legislative findings and declarations about "compelling need" for [the OIG] to investigate allegations of the improper discharge of duties and responsibilities "concerning the expenditure of State funds by and the procurement process of, all State departments and agencies," and "county and municipal governments," among others) (emphasis added); see also N.J.S.A. 52:15C-5 (consolidating [the OIG] function within the [OSC]).

The subpoena directed CAPS to produce documentation and reports, including electronic documents and emails, pertaining to: the education services it provides; real property agreements; regulatory compliance; tax filings; internal operations and business policies and procedures; financial activities, including investments; investigation reports, internal or otherwise, regarding the allegations against CAPS-Asbury and its officials; and all COVID-19 pandemic aid applications, agreements, awards, and data for related expenditures.

On December 16, 2024, in advance of a legislative hearing, CAPS sent a memorandum to the New Jersey Senate Education Committee, in which it acknowledged the public allegations "concerning the behavior of CAPS officials in [the] CAPS[-]Asbury Schools." It noted, when its leadership learned of the allegations, "CAPS immediately instituted a thorough battery of investigations,

reviews, and reforms to ensure these actions were addressed and systems put in place so they would never happen again."

CAPS did not respond to the subpoena. Instead, it filed a complaint and order to show cause on December 20, 2024. The complaint alleged the subpoena was overly broad because the "OSC is only entitled to receive documents that reasonably relate to a matter that is under investigation." CAPS also argued the OSC exceeded its authority because "it is an independent 'watchdog' agency that oversees, audits, and monitors [S]tate agencies, independent State authorities, [S]tate colleges and universities, local governments, and boards of education[,]" and "CAPS . . . is none of those." Also, the OSC failed to inform CAPS "what matter [the] OSC is investigating that the [s]ubpoena applies to."

Count I of the complaint sought to quash the subpoena because it requested "categories of documents and information that are unreasonable in their nature because they are overly broad, vague, seek privileged information, unlimited in time or scope, and would otherwise require CAPS . . . to generate new documents that presently do not exist to be able to comply as worded." The OSC had not "explained what matter is under investigation or how its . . . categories of requests reasonably relate to any matter under investigation."

7

Count II alternatively sought an order revising and limiting the subpoena consistent with Rule 1:9-2. The OSC answered on February 3, 2025.

The judge heard oral argument on February 20, 2025. At the close of this hearing, she reserved her ruling to enable the parties time to confer and narrow the scope of the dispute. This proved unsuccessful.

On April 8, 2025, the OSC issued a subpoena to CAPS-Asbury. It demanded:

> 1. The complete investigatory file for any investigation into violations or misconduct by [CAPS-Asbury] and its former or current officials, including but not limited to:
>
> > a. Any written or recorded witnesses' statements, any summaries of witnesses' statements, and/or other recordings of witnesses' statements, whether or not verbatim;
> >
> > b. Any documents, electronic files, or physical items gathered and/or produced to be reviewed as part of any such investigation, whether or not ultimately relied on;
> >
> > c. Any documents which provide, in whole or in part, the factual background of the investigation;
> >
> > d. Any memoranda, summaries, lists, or other items created by employees of [CAPS-]Asbury or anyone acting on

8

[CAPS-]Asbury's behalf to be used or reviewed as part of any such investigation;

e. Any memoranda or other documents memorializing or delineating the scope of the investigation or used to define the scope of the investigation;

f. Any correspondence, including emails and responses between employees or representatives of [CAPS-]Asbury and any other persons regarding the investigation, including its scope, or its findings;

g. Any emails and responses between employees or representatives of [CAPS-]Asbury and any employees or other persons requesting information in support of the investigation; and

h. Any documents created, modified, or produced by [CAPS-]Asbury . . . in response to, or to address findings of, the investigation.

On April 29, 2025, CAPS filed a second complaint identifying itself as petitioner, CAPS-Asbury as "nominal petitioner," and the OSC as respondent. CAPS joined CAPS-Asbury as a nominal petitioner "because it has an interest in the outcome of this litigation and is otherwise an indispensable party because a just adjudication cannot be afforded without its presence in this action." It asserted the initial subpoena covered "the very same materials [the OSC] now seeks from CA[PS-]Asbury through the [s]ubpoena."

9

Count I of the second complaint sought a declaratory judgment concluding the information sought by the OSC in the April 8 subpoena was protected by the attorney-client and work-product privileges. Count II sought to quash the subpoena because it requested privileged and protected documents from the Gibbons investigation, and was unreasonable and oppressive.

On June 6, 2025, the motion judge decided the issues raised in the first complaint. She rejected CAPS's argument that if she were to allow the subpoena, it would effectively be finding "anyone who contracts with a charter school as a private vendor could be subpoenaed." The judge found "CAPS is not simply a vendor of something less significant like school supplies or furniture. It is managing these charter schools as a [CMO], and it gets paid by the charter schools . . . in management fees."

The judge also rejected the argument CAPS "is neither a public agency, nor a private vendor of a public agency because N.J.S.A. 52:15C-14(d) does not explicitly list charter schools as" qualifying entities. She explained, N.J.S.A. 18A:36A-3 "states . . . a charter school shall be a public school and . . . the board of trustees, upon receiving a charter from the commissioner, shall be deemed to be public agents." For this reason, "a charter is . . . a unit of local government." The judge further found charter schools clearly serve a public purpose, are

10

subject to oversight by the Commissioner of Education, and have reporting requirements pursuant to N.J.S.A. 18A:36A-2, -3, -11, and -17. The OSC had "certified to the facts and information . . . necessary to . . . establish [its] reason for obtaining the documents it request[ed]."

The judge found the requests fell "within [the] OSC's statutory purview[ under N.J.S.A.] 52:15C-8(c)(4), which governs audits undertaken by the O[I]G, [and] says an entity means, . . . all entities exercising Executive branch authority, independent State authorities, units of local government, or their vendors." The OSC could "subpoena to compel the production of documents, records, and information from units of local government, which includes a charter school or a [private] vendor like CAPS." The judge found N.J.S.A. 52:15B-8(c) empowered the OSC "to subpoena any documents, books, records, papers, objects, or otherwise evidence of any person it reasonably believes may relate to a matter under investigation." She noted the statute permits the OSC to "apply to the Superior Court" to compel a party to comply with a subpoena.

Although "no one certified [as] to what they reasonably believed was relevant," the judge concluded "a CMO . . . operating a charter school . . . [can] be held accountable to [the] OIG and [the OSC] because it . . . receive[s] State funds, even if it's a vendor." Even if she found CAPS was "only a private

vendor, the documents being sought [were], nonetheless, relevant to [the OSC's] investigation of CAP[S] and its charter schools, including CAP[S-]Asbury, regarding whether there was fraud, waste, or abuse of State funds, as defined in [N.J.S.A.] 52:15C-14." CAPS had to comply with the OSC's requests for information because CAPS-Asbury was paying it with State funds. The judge observed, "[t]his is a condition of the contract."

The judge found the subpoena provided a sufficient explanation of the nature of its investigation because it identified CAPS as a CMO for CAPS-Asbury and stated the OSC was acting pursuant to N.J.S.A. 52:15B-1 and N.J.S.A. 52:15C-1. She cited the memorandum CAPS sent to the Senate Education Committee acknowledging the allegations made against CAPS-Asbury officials, CAPS's investigation into those allegations, and its plans for reforms.

Citing Larkins v. Solter, 450 N.J. Super. 519, 536 (App. Div. 2017), the judge concluded "the OSC is not required to provide its reasons for conducting a performance audit," and "an auditee may not condition its cooperation and assistance on [the] OSC first explaining why it selected the auditee for the performance audit." Therefore, "CAPS [was] not entitled to any more detailed amplification or explanation to why [the OSC] wants the information."

Regardless of whether N.J.S.A. 52:15B-8(c) or N.J.S.A. 52:15C-8(c)(4) applied, the judge still had to analyze the subpoena under "a good-cause analysis." In other words, the court could still exercise its power to quash or modify the scope of a subpoena under Rule 1:9-2 and Rule 4:10-3.

The judge had difficulty addressing CAPS's objections because they were "general and impossible to evaluate, notwithstanding the [c]ourt gave CAPS and the State the opportunity to try to narrow" the subpoena. Still, she found the subpoena was overbroad in time "because some of the requests [were] unlimited, while others [were] limited to 2019 to the present." She limited all the requests to 2019 to the present.

Regarding the subject matter of the subpoena, the judge noted the CAPS subpoena referenced CAPS-Asbury and the OSC had also issued a subpoena to CAPS-Asbury. As a result, she concluded "it would be overly burdensome for CAPS at this time to have to produce every document requested for every charter school." The subpoena was overbroad in substance because it sought "information regarding all of CAPS'[s] schools, even outside New Jersey." The judge limited the subpoena to CAPS-Asbury. If the OSC needed additional information, it could serve a new subpoena.

The judge found the April 8 subpoena to CAPS-Asbury duplicative of the subpoena issued to CAPS. Paragraph nineteen of the CAPS subpoena largely covered the same information sought in the CAPS-Asbury subpoena because it requested "all investigative reports, finding[s], or results from any investigations, internal or otherwise, regarding alleged violations by CAPS[-]Asbury and its former or current officials." The subpoena to CAPS-Asbury "basically [sought] witness statements, documents, files, memoranda, summaries, lists, other items, memoranda, documents, correspondence, emails, et cetera regarding that investigation."

The judge decided she would render a final order regarding the subpoena to CAPS. However, due to a conflict, a second judge would decide the CAPS-Asbury subpoena.

On June 9, 2025, the judge issued a final order denying without prejudice CAPS's motion to quash but granted modification of the subpoena. Her order attached a rider modifying the subpoena, which gave CAPS twenty-one days to produce the documents sought from January 1, 2019, to the present, limited to CAPS's documents regarding CAPS-Asbury, rather than every charter school managed by CAPS. The judge noted the request in paragraph nineteen is what the OSC sought in the CAPS-Asbury subpoena, therefore she declined to rule

14

on any objection to the paragraph as the issue would be handled by the second judge.

On July 3, 2025, CAPS filed its notice of appeal. It then moved to stay the June 9 order pending appeal. On September 12, 2025, the first motion judge granted the stay. She reasoned, even though CAPS did not meet the legal standard for a stay, not granting one could lead to inconsistent results in both cases and cause the parties to needlessly expend time and money. It was better to await our decision regarding the CAPS subpoena because it would "directly affect" the CAPS-Asbury subpoena litigation.

The OSC appealed from the September 12 order granting the stay. On August 21, 2025, the OSC filed a motion to consolidate the CAPS and CAPS-Asbury cases and transfer them to us because we had exclusive jurisdiction. CAPS and CAPS-Asbury opposed the motion and argued there were attorney-client and work-product privilege issues, the record had not been developed, and if the matter were transferred to us, we would be reviewing it in a vacuum.

The second motion judge heard and denied the motion on October 1, 2025. He reasoned consolidation was not possible because, although there was some overlap, there were different parties in each case, CAPS-Asbury's counsel was not involved in the CAPS subpoena case, and the issues were different.

A-3457-24

Moreover, the CAPS-Asbury subpoena had been "carved out" by the first judge and she had not yet addressed all the arguments related to the documents sought.

On October 21, 2025, the OSC appealed from the October 1 order. We subsequently granted the OSC leave to appeal and consolidated the appeals. CAPS-Asbury moved before us for an order seeking clarification about the scope of the third appeal, which we denied on December 11, 2025.

While these matters were pending, CAPS and CAPS-Asbury complied with the OSC's subpoenas seeking interviews of CAPS's executive employees. On August 20, 2025, the OSC notified CAPS-Asbury and CAPS it had completed its investigation and was preparing to issue a final public report. The OSC sought feedback and comments from CAPS-Asbury and CAPS regarding the findings in its draft report. CAPS agreed to produce its Chief Executive Officer for an interview on November 7, 2025. On December 4, 2025, the OSC issued an updated draft report to CAPS-Asbury and CAPS, again seeking feedback.

On January 12, 2026, the OSC released a preliminary report on CAPS and CAPS-Asbury. A Preliminary Investigation into College Achieve Greater Asbury Park Charter School and its Charter Management Organization, N.J. Off. of the State Comptroller (Jan. 12, 2026)

https://www.nj.gov/comptroller/reports/2026/approved/20260112.shtml. The report notes "the investigation remains ongoing." Ibid.

I.

A-3457-24

A.

CAPS argues the OSC lacks subpoena power when it is conducting an audit under N.J.S.A. 52:15C-14(d). Subpoena power only exists when the OSC is investigating under N.J.S.A. 52:15B-7. When the OSC acts under the authority of the transferred powers previously vested in the OIG, it investigates complaints concerning alleged fraud, waste, abuse, or mismanagement of State funds. If the OSC acts in its original and separately allotted capacity, it can: conduct internal audits; provide assurance on the adequacy of internal financial controls within agencies of government; and assess the adequacy of controls over financial management, contracting, financial reporting, and the delivery of government programs and activities with due regard to efficiency, effectiveness, and economy. The distinction is important because when the OSC is requesting information from a private vendor under N.J.S.A. 52:15C-14(d), it may lawfully obtain only "relevant documents and information" in furtherance of its examination of how public funds are being used. However, when the OSC

operates under its separately allotted, transferred powers previously vested in the OIG, it may subpoena "documents and information reasonably related to the matter under investigation" under N.J.S.A. 52:15B-7.

CAPS claims the OSC was acting as comptroller, not inspector general, and thus was unauthorized to demand the information it sought in the subpoena. None of the disputed subpoena requests were relevant to the OSC's assessment of the financial performance of CAPS-Asbury, who was the actual target of the audit.

Therefore, according to CAPS, N.J.S.A. 52:15C-14(d) controlled, and the first motion judge should have held the OSC could only obtain "relevant documents and information." Had she applied this standard, the subpoena to CAPS would have been quashed because none of the documents demanded were relevant to the OSC's assessment of the financial performance of CAPS-Asbury. The subpoena's demands for the private financial and operational matters of CAPS, a private entity, exceeded the OSC's legal authority, and were irrelevant because CAPS was not subject to the OSC's audit authority.

CAPS asserts it had a right to question the subpoena and move to quash it. The first motion judge ignored the relevancy arguments and found the OSC could issue a subpoena if it "reasonably believes" the materials sought may

18

relate to a matter under investigation under N.J.S.A. 52:15B-8. CAPS alleges our law has long required an agency subpoena outline with reasonable certainty the subject matter of the investigation and make a substantial showing the records contain evidence relevant and material to the issue. The OSC's subpoena did not comply with these requirements, and its attempts to explain itself after the fact did not cure the deficiency. Thus, it was not entitled to enforcement of the subpoena.

CAPS claims the first motion judge overlooked the plain meaning of N.J.S.A. 52:15B-1 and N.J.S.A. 52:15C-1, when she found the OSC possesses conglomerated investigatory power. The Legislature preserved the delineation between the OSC's agency powers and those it inherited from the OIG, evidencing its intent to preserve the distinct statutory objectives of both the OIG and the OSC. CAPS claims the judge ignored the respective enabling statutes and ratified the OSC's subpoena, which was ultra vires.

CAPS contends the first motion judge's findings lack evidential support under the relevancy standard because the OSC never explained why the documents it sought were relevant to its investigation. The judge's reliance on the memorandum CAPS submitted to a Senate committee was not enough because the memorandum did not explain the allegations or conduct of CAPS-

19

Asbury or indicate how the subpoena was relevant to the scope of the OSC's regulatory authority.

CAPS argues the judge did not adequately limit the scope of records sought, and the subpoena remains overbroad. She only eliminated one category of documents, leaving CAPS to produce real estate transactions and leases, service contracts, personnel matters, and detailed payment information. None of these records pertain to any review or audit of CAPS-Asbury. And finding, reviewing, and producing these records would impose a substantial economic burden on CAPS as a non-profit corporation.

Even though the judge revised the subpoena on a temporal basis and limited it only as to CAPS-Asbury, the subpoena sought information pertaining to every aspect of CAPS-Asbury's operations, including utility bills, transportation, school supplies, and salaries. CAPS insists once it receives contracted-for funds from charter schools, the money becomes private funds, and the OSC lacks any authority to compel the information as part of an audit.

CAPS also argues the first motion judge failed to address its several requests for relief, including additional time for production and exclusion of documents which were not readily accessible. The lack of findings on these issues constituted reversible error under Rule 1:7-4.

B.

The essential questions posed in this appeal involve whether the OSC has subpoena power when it seeks information under N.J.S.A. 52:15C-14(d). This appeal also asks what the applicable standard is when a subpoena recipient is responding to a subpoena from the OSC. Is the recipient required to provide the OSC with prompt access to all relevant documents and information as stated in N.J.S.A. 52:15C-14(d)? Or can the information be compelled if the OSC "reasonably believes" the subpoenaed party "may be able to give information relating to a matter under investigation" as stated in N.J.S.A. 52:15B-8(c)?

Before we address these questions, we note there is no dispute CAPS is a vendor as defined in N.J.S.A. 52:15C-14(d). Additionally, it is abundantly clear from the facts and the record the OSC was operating in its investigative capacity. Still, we must address CAPS's arguments regarding the competing statutes and how they affect the OSC's authority to compel the production of documents.

Questions involving statutory interpretation are subject to our de novo review. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). We are obligated to enforce a statute where its plain language is clear. Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019). Even so, "our basic rules of statutory interpretation recognize that not every statute is clear, and in case of ambiguity,

our guiding light is the Legislature's intent." Ibid. Our Supreme Court has stated it is a "cardinal principle that the judicial construction of statutes must always seek as its 'paramount goal' to carry out the Legislature's apparent intent." State v. Gomes, 253 N.J. 6, 28 (2023) (quoting Branch v. Cream-O-Land Dairy, 244 N.J. 567, 587 (2021)). Where more than one statute is in play, we must reconcile those statutes "so as to give full effect to each constituent part of an overall legislative scheme." State v. Hodde, 181 N.J. 375, 379 (2004).

As we previewed, it is clear audits and investigations are different undertakings. The Legislature did not eliminate these separate functions when it transferred the OIG's powers to the OSC. Rather, the Legislature recognized that, in the OIG, the OSC, and the Office of the Medicaid Inspector General, there were "numerous agencies" performing similar functions. N.J.S.A. 52:15C-20(a). Although those functions helped prevent "the waste, fraud, and abuse of public resources, the overlapping of the missions of" these three entities had "the potential to lead to inefficiencies in the performance of these critical functions." N.J.S.A. 52:15C-20(b). Therefore, the Legislature concluded "[t]he consolidation of the powers and duties of these existing State offices within the [OSC] will allow for the systematic, efficient, and coordinated review and oversight of the State and its subdivisions." N.J.S.A. 52:15C-20(c) (emphasis

added).  The highlighted language shows the Legislature intended to place the plurality of powers and duties under one agency but did not intend a melding of the different roles played by these agencies.

Indeed, in a general sense, an audit is "[a] formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards."  Black's Law Dictionary 150 (9th ed. 2009).  Whereas investigations involve an inquiry into a matter.  See id. at 902 (defining "investigate").  "'Investigate' is a verb of broad meaning, which may but does not necessarily include in its scope that type of verification which is sought through an audit."  In re Commuter Operating Agency's Determination, 164 N.J. Super. 311, 316 (App. Div. 1978).

N.J.S.A. 52:15B-8(c) reads as follows:  "In furtherance of an investigation, the [OIG] may compel at a specific time and place, by subpoena, the appearance and sworn testimony of any person whom the [OIG] reasonably believes may be able to give information relating to a matter under investigation."  (Emphasis added).  N.J.S.A. 52:15C-14(d) requires:

> [p]rivate vendors or other persons contracting with or receiving funds from a unit in the Executive branch of State government . . . upon request by the [OSC,] provide [the OSC] with prompt access to all relevant documents and information as a condition of the contract and receipt of public monies.

23

[(Emphasis added).]

N.J.S.A. 52:15B-8(c) requires a subpoena because it is not limited to persons or entities doing business with the State or receiving State funds as is the case with a vendor subject to N.J.S.A. 52:15C-14(d). In the context of this litigation, N.J.S.A. 52:15B-8(c) grants the OSC the longer reach of a subpoena to obtain the information it reasonably believes relates to the investigation. Thus, N.J.S.A. 52:15B-8(c) and N.J.S.A. 52:15C-14(d) are not mutually exclusive and can be read in a harmonious fashion. The former permits the OSC to look for information beyond the State-vendor relationship, which may pertain to that relationship. The latter is a streamlined process unencumbered by subpoena processes because it is designed for an audit. The vendor is impelled to provide the relevant audit-related information by the risk of losing receipt of public funds rather than through enforcement of a subpoena.

Based on our statutory analysis, we conclude the OSC's subpoena to CAPS improperly cited both N.J.S.A. 52:15B-1 and N.J.S.A. 52:15C-1, and the OSC's subpoena power resides only under N.J.S.A. 52:15B-8(c). But as the first motion judge found, the OSC did not lack the power to subpoena CAPS for the documents it sought related to CAPS-Asbury. N.J.S.A. 52:15C-14(d) is not the OSC's sole means of obtaining information from a vendor like CAPS, or for that

24

matter, a charter school like CAPS-Asbury. The OSC can exercise its power under N.J.S.A. 52:15B-8(c) to issue a subpoena as part of an investigation, even if the subpoena is to a vendor. Having found the subpoena valid, we turn to the parties' arguments related to the information sought by the subpoena.

"It is well settled that the subject of a subpoena duces tecum must be specified with reasonable certainty, and that there must be a substantial showing that the evidence sought to be adduced is relevant and material to the issues of the case." Wasserstein v. Swern & Co., 84 N.J. Super. 1, 6-7 (App. Div. 1964). "If the specification is so broad and indefinite as to be oppressive and in excess of the demandant's necessities, the subpoena is not sustainable." Id. at 7. A trial court "may quash or modify [a] subpoena or notice if compliance would be unreasonable or oppressive." R. 1:9-2. We review a trial court's decision on a motion to quash a subpoena for an abuse of discretion. In re Subpoena Duces Tecum on Custodian of Recs., 214 N.J. 147, 162 (2013).

Pursuant to these principles, the first motion judge properly exercised her discretion when she modified the subpoena to limit it temporally and limit its subject matter to CAPS-Asbury. For these reasons, we affirm as modified the June 9, 2025 order. We add, because we have affirmed the subpoena's validity, the parties are free to address their privilege-based claims with the trial court as

25

to the information sought by the OSC. Also, if there are difficulties associated with the timely production of the materials sought by the OSC, the court can address them in the normal course by conferencing the matter with the parties or through motion practice.

## II.

### A-0908-25 and A-0910-25

#### A.

The OSC argues the first motion judge erred when she granted CAPS a stay pending appeal. The judge issued the stay despite finding CAPS failed to meet the legal standard for one, and yet, simultaneously denied CAPS's motion to quash the subpoena. The OSC reiterates it had the right to the information as a matter of law.

We need not reach this issue in light of our decision. The stay is vacated, and the matter is returned to the trial court for further proceedings.

#### B.

The OSC asserts the second motion judge erred when he denied its request to transfer the CAPS-Asbury subpoena case to us. It asserts we have exclusive jurisdiction to determine the scope of the OSC's authority. We do not reach this

argument because we have already consolidated these matters, and this issue is moot.

Substantively, the OSC urges us to find the CAPS-Asbury subpoena was a valid exercise of its oversight for the same reasons argued regarding the CAPS subpoena. We do so for the reasons expressed in A-3457-24. CAPS and CAPS-Asbury were subject to the OSC's subpoena power under N.J.S.A. 52:15B-8(c).

The OSC argues neither CAPS nor CAPS-Asbury explain why attorney-client privilege applies. The attorney-client privilege is not limitless and must be strictly construed under the facts of each case. Even then, CAPS and CAPS-Asbury had to show how the privilege overrides public policy and the obligation to disclose the information sought. The OSC asserts a similar argument regarding the work-product doctrine.

We "can consider a case only to the point at which it had been unfolded below." Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997). Our review is "confined to the record made in the trial court," and we "will not consider evidence submitted on appeal that was not in the record before the trial court." Ibid.

We decline to reach the OSC's arguments related to the privilege issues because a record was not sufficiently developed to enable our review. As we recounted in A-3457-24, this issue must await a resolution by the trial court.

### III.

Finally, to the extent we have not addressed an argument raised in these appeals, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The June 9, 2025 order is affirmed as modified in A-3457-24. The September 12, 2025 order granting a stay is vacated and remanded for further proceedings in A-0910-25. And A-0908-25 challenging the October 1, 2025 order is dismissed as moot. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division